UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

MAURICE HUGHES,

                                    Plaintiff,

                                                        9:06-CV-1462
v.                                                      (TJM/GHL)

DR. BUTT, et al.,

                                    Defendants.
_____

APPEARANCES:                                     OF COUNSEL:

MAURICE HUGHES
Plaintiff *pro se*
117 South Fourth Street #406
Allentown, Pennsylvania 18102

BROOME COUNTY ATTORNEY'S OFFICE                  AARON J. MARCUS, ESQ.
Edwin L. Crawford County Office Building
P.O. Box 1766
Binghamton, New York 13902-1766

GEORGE H. LOWE, United States Magistrate Judge

## <u>REPORT-RECOMMENDATION</u>

This *pro se* prisoner civil rights action, commenced pursuant to 42 U.S.C. § 1983, has

been referred to me for Report and Recommendation by the Honorable Thomas J. McAvoy,

Senior United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c).

Plaintiff Maurice Hughes alleges that he was denied medical care, discriminated against,

subjected to excessive force, and wrongfully detained in the Special Housing Unit

("SHU")/keeplock at the Broome County Jail. Currently pending before the Court is Defendants'

motion for summary judgment pursuant to Federal Rule of Civil Procedure 56.  (Dkt. No. 40.)

For the reasons that follow, I recommend that Defendants' motion be granted.

I.      BACKGROUND

      A.      **Claims Regarding Plaintiff's Assistive Devices**

Plaintiff alleges that he suffers from degenerative spine ailments and lumbar disc bulges. (Dkt. No. 9 at 4[1].)  When Plaintiff arrived at the Broome County Jail on August 23, 2005, he had a cane, a knee brace, and a back brace that had been prescribed by his physician.  (Dkt. No. 9 at 4, 9.)  Plaintiff was initially placed in the medical unit and allowed to keep his cane, knee brace, and back brace.  (Dkt. No. 9 at 9.)  On August 25, 2005, Plaintiff was moved to the jail's regular housing unit.  At that time, his cane, knee brace, and back brace were taken away on the grounds that they were security risks.  (Dkt. No. 9 at 9.)

Plaintiff alleges that the facility's doctor, Defendant Butt, was aware of Plaintiff's ailments and his need for the devices, yet allowed "security to interfere with his profession, at the cost of my physical well being."  (Dkt. No. 9 at 4-5.)  Plaintiff did not receive his cane, knee brace, and back brace until December 2005.  (Dkt. No. 9 at 9.)  He alleges that not having the devices made his "ailments much ... worse."  (Dkt. No. 9 at 9.)

I have construed Plaintiff's complaint as asserting an Eighth Amendment medical care claim against Defendant Butt.

      B.      **Claims Regarding the Incident With Defendant Simmons**

On November 10, 2005, Plaintiff received another inmate's medication.  (Dkt. No. 9 at 7.)  In an affidavit filed in support of Defendants' motion for summary judgment, Defendant

---

[1]       Page numbers for Plaintiff's amended complaint refer to the page number assigned by the Court's ECF system.

Corrections Officer Barry Simmons states that Plaintiff became "loud and disruptive ... by, essentially, giving out orders and making unwarranted threats, specifically that he was going to 'get them'".  Defendant Simmons believed that the "them" to whom Plaintiff referred was the medical staff.  (Dkt. No. 40-21 at ¶ 6.)  Plaintiff alleges that he merely asked why he received the wrong medication.  (Dkt. No. 9 at 7, 11.)

Simmons states that Plaintiff had "challenged the nursing staff with regard to his medications" on other occasions and that Simmons "found his behavior on November 10, 2005, to be unacceptable."  (Dkt. No. 40-21 at ¶ 7.)  Simmons charged Plaintiff with harassment, making a threat to a person, and engaging in conduct disruptive to the safety or operation of the facility.  (Dkt. No. 40-21 at ¶ 9.)  Simmons had Plaintiff taken to the SHU pending a disciplinary hearing.  (Dkt. No. 40-21 at ¶ 8.)  Plaintiff alleges that he was forced to carry his belongings to the SHU without his cane, back brace, or knee brace and despite doctors' orders that limited him to no lifting, no prolonged standing, and no prolonged walking.  (Dkt. No. 9 at 7.)

Plaintiff alleges that Defendant Sgt. Mary Anne Thayne approved the misbehavior report written by Defendant Simmons.  (Dkt. No. 9 at 8.)  In an affidavit filed in support of Defendants' motion for summary judgment, Defendant Thayne states that as a zone sergeant, she was responsible for reviewing and signing incident reports for any incidents that occurred in her zone during her shift.  She reviewed the forms for content and format, but did not assess the validity of the charges.  (Dkt. No. 40-24 at ¶¶ 3-4.)  As the zone sergeant on November 10, 2005, she reviewed and signed Defendant Simmons' incident report regarding Plaintiff.  (Dkt. No. 40-24 at ¶ 5.)

Plaintiff was given a disciplinary hearing and found guilty of engaging in conduct

disruptive to the safety or operation of the facility.  He was sanctioned to 10 days in the SHU.
(Dkt. No. 40-22 at ¶ 12.)  Plaintiff could have appealed his SHU sentence to Defendant Jail
Administrator Mark Smolinksy, but did not do so.  (Dkt. No. 40-22 at ¶ 13.)

I have construed the complaint as asserting the following claims regarding this incident:
(1) a due process claim against Defendants Simmons and Thayne based on the SHU
confinement; and (2) an Eighth Amendment claim based on requiring Plaintiff to carry his
belongings.

### C.     Claims Regarding the Incidents with Defendant Valls

In early October 2006, Plaintiff was with his fiancé in the visiting room.  (Dkt. No. 9 at
5.)  His back began to spasm and he asked for permission to stand to adjust his back brace.  (Dkt.
No. 9 at 5, 10.)  A corrections officer granted permission.  (Dkt. No. 9 at 5, 10.)  Seconds later,
Defendant Corrections Officer Adam Valls told Plaintiff to sit down or his visit would be
terminated.  (Dkt. No. 9 at 5, 10.)  Plaintiff said that he had been given permission to stand,
which Defendant Valls confirmed with the other corrections officer.  (Dkt. No. 9 at 5, 10.)
Plaintiff alleges that Defendant Valls then began snarling at Plaintiff.  (Dkt. No. 9 at 5.)  In the
search area after visiting hours, Defendant Valls said "oh, you thought that was funny, huh,
asshole?"  (Dkt. No. 9 at 5.)

Plaintiff alleges that about a week later, Defendant Valls asked Plaintiff's fiancé whether
her boyfriend was "the guy with the cane" and told her that "the two of you can't hug on the side
wall anymore."  (Dkt. No. 9 at 5, 10.)

Plaintiff alleges that on October 27, 2006, Defendant Valls "let a Caucasian man jump up
and run all over the visit floor, and he said absolutely nothing."  (Dkt. No. 9 at 11.)  Plaintiff

4

asserts that this demonstrates Defendant Valls' "blatant racism."  (Dkt. No. 9 at 11.)

That day, Defendant Valls searched Plaintiff after visiting hours.  (Dkt. No. 9 at 10.)
Plaintiff was nude and asked permission to stand on his shirt so that he did not have to stand on
the filthy floor.  (Dkt. No. 9 at 10.)  Plaintiff alleges that Defendant Valls said "hell fucking no,
you asshole. Now give me those shoes!"  (Dkt. No. 9 at 10.)  As Plaintiff bent down, Defendant
Valls "started kicking towards my head, almost kicked me in my face, causing me to jerk back, in
doing so, I have (sic) a non-stop back spasm."  (Dkt. No. 9 at 10-11.)  When Plaintiff stood, he
found that he could not turn his head to the left without experiencing a very sharp pain.  (Dkt.
No. 9 at 11.)

In an affidavit filed in support of Defendants' motion for summary judgment, Defendant
Valls states that during his search of Plaintiff, Plaintiff ignored an order to hand Defendant Valls
his clothing and sneakers.  (Dkt. No. 40-25 at ¶ 6.)  Plaintiff told Defendant Valls that he wanted
to stand on his shirt after it had been searched.  Defendant Valls explained that he needed to
search all of his clothing items first.  (Dkt. No. 40-25 at ¶ 7.)  Plaintiff disregarded Defendant
Valls' orders and attempted to stand on his clothing.  In order to keep his hands free, Defendant
Valls used his foot to move Plaintiff's clothes out of Plaintiff's reach.  (Dkt. No. 40-25 at ¶ 8.)
Defendant Valls states that he never kicked at Plaintiff's head or threatened him in any way.
(Dkt. No. 40-25 at ¶ 10.)

Corrections Officer Daniel Weir was in the search room at the time of the incident
between Plaintiff and Defendant Valls.  In an affidavit filed in support of Defendants' motion for
summary judgment, he states that "as soon as Officer Valls began to conduct the search and
requested that the plaintiff hand over his clothing, the plaintiff became difficult and verbally

combative with Officer Valls regarding the plaintiff's desire to stand on his clothing." (Dkt. No. 40-26 at ¶ 3.)  Weir states that after Plaintiff "repeatedly fail[ed] to comply with Officer Valls' orders," Defendant Valls "moved the plaintiff's clothing with his foot out of the plaintiff's reach. At that point in time, the plaintiff became very belligerent towards Officer Valls." (Dkt. No. 40-26 at ¶ 4.)  Weir states that Defendant Valls "did not became physically involved with the plaintiff" and that he "never saw Officer Valls kick at the plaintiff's head or threaten him in any way." (Dkt. No. 40-26 at ¶ 5.)

Corrections Officer James Picalia was also in the search room at the time of the incident between Plaintiff and Defendant Valls.  Like Weir, he observed that Plaintiff became "verbally combative with Officer Valls regarding his desire to stand on his clothing." (Dkt. No. 40-19 at ¶ 3.)  Like Weir, he saw Defendant Valls move Plaintiff's clothing with his foot, but did not see Defendant Valls "become physically involved with the plaintiff" or kick at Plaintiff's head.  (Dkt. No. 40-19 at ¶ 4.)

In opposition to the motion for summary judgment, Plaintiff states that Defendant Valls kicked "at" Plaintiff's head "with intent to cause irreparable harm to Plaintiff." (Dkt. No. 44 (Statement of Material Facts) at ¶ 15.)

Plaintiff informed Defendant Sgt. Sutton about the incident with Defendant Valls. Defendant Sutton said he would "take a look."  Plaintiff alleges that "obviously he didn't look deep enough." (Dkt. No. 9 at 7.)

Thereafter, Defendant Lt. Irwin viewed the tape of the incident between Defendant Valls and Plaintiff.  (Dkt. No. 9 at 6.)  After viewing the tape, Defendant Irwin instructed an officer to confine Plaintiff to his cell.  He also revoked Plaintiff's contact visits.  (Dkt. No. 9 at 6.)

6

Several days later, Plaintiff was called to meet with Defendant Jail Administrator Mark Smolinsky.  Defendant Smolinsky informed Plaintiff that his contact visits had been restored.  He told Plaintiff that an internal affairs officer would conduct a full investigation.  (Dkt. No. 9 at 6.)

On November 27, 2006, the internal affairs officer took Plaintiff's statement for two hours.  (Dkt. No. 9 at 7.)  Thereafter, Plaintiff was told that the investigation was over, that no charges would be pressed, and that Plaintiff should contact the jail administrator for more information.  (Dkt. No. 9 at 7.)

Plaintiff wrote to Defendant Sheriff David E. Harder regarding Defendant Valls' conduct.  Defendant Harder did not respond.  (Dkt. No. 9 at 6.)

I have construed Plaintiff's allegations regarding this incidents as asserting the following claims: (1) an Eighth Amendment excessive force claim against Defendant Valls; (2) an equal protection claim against Defendant Valls; (3) a due process/Eighth Amendment claim against Defendant Irwin; (4) a claim that Defendants Sutton, Irwin, and Smolinksy failed to properly investigate the incident; and (5) a claim that Defendant Harder failed to respond to Plaintiff's grievance.

## II.    APPLICABLE LEGAL STANDARDS

Defendants move for summary judgment.  Under Federal Rule of Civil Procedure 56, summary judgment is warranted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The party moving for summary judgment bears the initial burden of showing, through the production of admissible evidence, that no genuine issue of material fact exists.

*Major League Baseball Properties, Inc. v. Salvino*, 542 F.3d 290, 309 (2d Cir. 2008).  Only after

the moving party has met this burden is the non-moving party required to produce evidence

demonstrating that genuine issues of material fact exist.  *Salahuddin v. Goord*, 467 F.3d 263,

272-73 (2d Cir. 2006).  The nonmoving party must do more than "rest upon the mere allegations

. . . of the [plaintiff's] pleading" or "simply show that there is some metaphysical doubt as to the

material facts."[2]  Rather, "[a] dispute regarding a material fact is *genuine* if the evidence is such

that a reasonable jury could return a verdict for the nonmoving party."[3]  In determining whether a

genuine issue of material[4] fact exists, the Court must resolve all ambiguities and draw all

reasonable inferences against the moving party.[5]

### B.    Legal Standard Governing Motion to Dismiss for Failure to State a Claim

To the extent that a defendant's motion for summary judgment under Federal Rule of

Civil Procedure 56 is based entirely on the allegations of the plaintiff's complaint, such a motion

is functionally the same as a motion to dismiss for failure to state a claim under Federal Rule of

Civil Procedure 12(b)(6).  As a result, "[w]here appropriate, a trial judge may dismiss for failure

to state a cause of action upon motion for summary judgment."  *Schwartz v. Compagnise*

---

[2]    *Matsushita*, 475 U.S. at 585-86; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *see also* Fed. R. Civ. P. 56(e) ("When a motion for summary judgment is made [by a defendant] and supported as provided in this rule, the [plaintiff] may not rest upon the mere allegations . . . of the [plaintiff's] pleading . . . .").

[3]    *Ross v. McGinnis*, 00-CV-0275, 2004 WL 1125177, at *8 (W.D.N.Y. Mar. 29, 2004) [internal quotations omitted] [emphasis added].

[4]    A fact is "material" only if it would have some effect on the outcome of the suit. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

[5]    *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997) [citation omitted]; *Thompson v. Gjivoje*, 896 F.2d 716, 720 (2d Cir. 1990) [citation omitted].

*General Transatlantique*, 405 F.2d 270, 273-74 (2d Cir. 1968) [citations omitted]; *accord*, *Katz v. Molic*, 128 F.R.D. 35, 37-38 (S.D.N.Y. 1989) ("This Court finds that . . . a conversion [of a Rule 56 summary judgment motion to a Rule 12(b)(6) motion to dismiss the complaint] is proper with or without notice to the parties.").  Moreover, even where a defendant has not advanced such a failure-to-state-a-claim argument on a motion for summary judgment, a district court may, *sua sponte*, address whether a *pro se* prisoner has failed to state a claim upon which relief may be granted.[6]  For these reasons, it is appropriate to briefly summarize the legal standard governing Federal Rule of Civil Procedure 12(b)(6) motions to dismiss.

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  It has long been understood that a defendant may base such a motion on either or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Federal Rule of Civil Procedure 8(a)(2);[7] or (2) a challenge to the legal cognizability of the claim.[8]

_____

[6]      The authority to conduct this *sua sponte* analysis is derived from two sources: (1) 28 U.S.C. § 1915(e)(2)(B)(ii), which provides that "the court shall dismiss [a] case [brought by a prisoner proceeding *in forma pauperis*] at any time if the court determines that . . . the action . . . is frivolous or malicious[,] . . . fails to state a claim on which relief may be granted[,] . . . or . . . seeks monetary relief against a defendant who is immune from such relief"; and (2) 28 U.S.C. § 1915A(b), which provides that, "[o]n review, the court shall . . . dismiss the [prisoner's] complaint, or any portion of the complaint, if the complaint . . . is frivolous, malicious, or fails to state a claim upon which relief may be granted . . . ."

[7]      *See* 5C Wright & Miller, *Federal Practice and Procedure* § 1363 at 112 (3d ed. 2004) ("A motion to dismiss for failure to state a claim for relief under Rule 12(b)(6) goes to the sufficiency of the pleading under Rule 8(a)(2).") [citations omitted]; *Princeton Indus., Inc. v. Rem*, 39 B.R. 140, 143 (Bankr. S.D.N.Y. 1984) ("The motion under F.R.Civ.P. 12(b)(6) tests the formal legal sufficiency of the complaint as to whether the plaintiff has conformed to F.R.Civ.P. 8(a)(2) which calls for a 'short and plain statement' that the pleader is entitled to relief."); *Bush v. Masiello*, 55 F.R.D. 72, 74 (S.D.N.Y. 1972) ("This motion under Fed. R. Civ. P. 12(b)(6) tests the formal legal sufficiency of the complaint, determining whether the complaint has conformed

Rule 8(a)(2) requires that a pleading contain "a short and plain statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (emphasis added).  By requiring this "showing," Rule 8(a)(2) requires that the pleading contain a short and plain statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests."[9]  The main purpose of this rule is to "facilitate a proper decision on the

---

to Fed. R. Civ. P. 8(a)(2) which calls for a 'short and plain statement that the pleader is entitled to relief.'").

      [8]     *See  Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002) ("These allegations give respondent fair notice of what petitioner's claims are and the grounds upon which they rest. . . . In addition, they state claims upon which relief could be granted under Title VII and the ADEA."); *Wynder v. McMahon*, 360 F.3d 73, 80 (2d Cir. 2004) ("There is a critical distinction between the notice requirements of Rule 8(a) and the requirement, under Rule 12(b)(6), that a plaintiff state a claim upon which relief can be granted."); *Phelps v. Kapnolas*, 308 F.3d 180, 187 (2d Cir. 2002) ("Of course, none of this is to say that a court should hesitate to dismiss a complaint when the plaintiff's allegation . . . fails as a matter of law.") [citation omitted]; *Kittay v. Kornstein*, 230 F.3d 531, 541 (2d Cir. 2000) (distinguishing between a failure to meet Rule 12[b][6]'s requirement of stating a cognizable claim and Rule 8[a]'s requirement of disclosing sufficient information to put defendant on fair notice); *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 379 F. Supp.2d 348, 370 (S.D.N.Y. 2005) ("Although Rule 8 does not require plaintiffs to plead a theory of causation, it does not protect a legally insufficient claim [under Rule 12(b)(6)].") [citation omitted]; *Util. Metal Research & Generac Power Sys.*, 02-CV-6205, 2004 U.S. Dist. LEXIS 23314, at *4-5 (E.D.N.Y. Nov. 18, 2004) (distinguishing between the legal sufficiency of the cause of action under Rule 12[b][6] and the sufficiency of the complaint under Rule 8[a]); *accord*, *Straker v. Metro Trans. Auth.*, 331 F. Supp.2d 91, 101-102 (E.D.N.Y. 2004); *Tangorre v. Mako's, Inc.*, 01-CV-4430, 2002 U.S. Dist. LEXIS 1658, at *6-7 (S.D.N.Y. Jan. 30, 2002) (identifying two sorts of arguments made on a Rule 12[b][6] motion--one aimed at the sufficiency of the pleadings under Rule 8[a], and the other aimed at the legal sufficiency of the claims).

      [9]     *Dura Pharm., Inc. v. Broudo*, 125 S. Ct. 1627, 1634 (2005) (holding that the complaint failed to meet this test) [citation omitted; emphasis added]; *see also Swierkiewicz*, 534 U.S. at 512 [citation omitted]; *Leathernman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 168 (1993) [citation omitted].

merits."[10]  A complaint that fails to comply with this rule "presents far too heavy a burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of [plaintiff's] claims."[11]

"To survive a motion to dismiss, a complaint must contain sufficient factual matter ... to 'state a claim to relief that is plausible on its face.'  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct. 1937, 1949 (2009) (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556-57, 570 (2007)).  Accordingly, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but has not *shown* - that the pleader is entitled to relief."  *Iqbal*, 129 S.Ct. at 1950 (emphasis added).

---

[10]    *Swierkiewicz*, 534 U.S. at 514 (quoting *Conley*, 355 U.S. at 48); *see also Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995) ("Fair notice is that which will enable the adverse party to answer and prepare for trial, allow the application of res judicata, and identify the nature of the case so it may be assigned the proper form of trial.") [citation omitted]; *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988) ("[T]he principle function of pleadings under the Federal Rules is to give the adverse party fair notice of the claim asserted so as to enable him to answer and prepare for trial.") [citations omitted].

[11]    *Gonzales v. Wing*, 167 F.R.D. 352, 355 (N.D.N.Y. 1996) (McAvoy, J.), *aff'd*, 113 F.3d 1229 (2d Cir. 1997) (unpublished table opinion); *accord*, *Hudson v. Artuz*, 95-CV-4768, 1998 WL 832708, at *2 (S.D.N.Y. Nov. 30, 1998), *Flores v. Bessereau*, 98-CV-0293, 1998 WL 315087, at *1 (N.D.N.Y. June 8, 1998) (Pooler, J.).  Consistent with the Second Circuit's application of § 0.23 of the Rules of the U.S. Court of Appeals for the Second Circuit, I cite this unpublished table opinion, not as precedential authority, but merely to show the case's subsequent history.  *See*, *e.g.*, *Photopaint Technol., LLC v. Smartlens Corp.*, 335 F.3d 152, 156 (2d Cir. 2003) (citing, for similar purpose, unpublished table opinion of *Gronager v. Gilmore Sec. & Co.*, 104 F.3d 355 [2d Cir. 1996]).

It should also be emphasized that, "[i]n reviewing a complaint for dismissal under Fed. R. Civ. P. 12(b)(6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor."[12]  "This standard is applied with even greater force where the plaintiff alleges civil rights violations or where the complaint is submitted *pro se*."[13]  In other words,  while all pleadings are to be construed liberally under Rule 8(e), *pro se* civil rights pleadings are to be construed with an *extra* degree of liberality.

For example, the mandate to read the papers of *pro se* litigants generously makes it appropriate to consider a plaintiff's papers in opposition to a defendant's motion to dismiss as effectively amending the allegations of the plaintiff's complaint, to the extent that those factual assertions are consistent with the allegations of the plaintiff's complaint.[14]  Moreover, "courts

_____

[12]     *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (affirming grant of motion to dismiss) [citation omitted]; *Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir. 1994).

[13]     *Hernandez*, 18 F.3d at 136 [citation omitted]; *Deravin v. Kerik*, 335 F.3d 195, 200 (2d Cir. 2003) [citations omitted]; *Vital v. Interfaith Med. Ctr.*, 168 F.3d 615, 619 (2d Cir. 1999) [citation omitted].

[14]     "Generally, a court may not look outside the pleadings when reviewing a Rule 12(b)(6) motion to dismiss.  However, the mandate to read the papers of *pro se* litigants generously makes it appropriate to consider plaintiff's additional materials, such as his opposition memorandum." *Gadson v. Goord,* 96-CV-7544, 1997 WL 714878, at *1, n. 2 (S.D.N.Y. Nov. 17, 1997) (citing, *inter alia, Gil v. Mooney*, 824 F.2d 192, 195 [2d Cir. 1987] [considering plaintiff's response affidavit on motion to dismiss]).  Stated another way, "in cases where a pro se plaintiff is faced with a motion to dismiss, it is appropriate for the court to consider materials outside the complaint to the extent they 'are consistent with the allegations in the complaint.'" *Donhauser v. Goord*, 314 F. Supp.2d 119, 212 (N.D.N.Y. 2004) (considering factual allegations contained in plaintiff's opposition papers) [citations omitted], *vacated in part on other grounds*, 317 F. Supp.2d 160 (N.D.N.Y. 2004).  This authority is premised, not only on case law, but on Rule 15 of the Federal Rules of Civil Procedure, which permits a plaintiff, as a matter of right, to amend his complaint once at any time before the service of a responsive pleading–which a motion to dismiss is not.  *See Washington v. James*, 782 F.2d 1134, 1138-39 (2d Cir. 1986) (considering subsequent affidavit as amending *pro se* complaint, on motion to dismiss) [citations omitted].

must construe *pro se* pleadings broadly, and interpret them to raise the strongest arguments that they suggest."[15]  Furthermore, when addressing a *pro se* complaint, *generally* a district court "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated."[16]  Of course, an opportunity to amend is not required where the plaintiff has already amended his complaint.[17]  In addition, an opportunity to amend is not required where "the problem with [plaintiff's] causes of action is substantive" such that "[b]etter pleading will not cure it."[18]

---

[15]     *Cruz v. Gomez*, 202 F.3d 593, 597 (2d Cir. 2000) (finding that plaintiff's conclusory allegations of a due process violation were insufficient) [internal quotation and citation omitted].

[16]     *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) [internal quotation and citation omitted]; *see also* Fed. R. Civ. P. 15(a) (leave to amend "shall be freely given when justice so requires").

[17]     *Yang v. New York City Trans. Auth.*, 01-CV-3933, 2002 WL 31399119, at *2 (E.D.N.Y. Oct. 24, 2002) (denying leave to amend where plaintiff had already amended complaint once); *Advanced Marine Tech. v. Burnham Sec ., Inc.*, 16 F.Supp. 2d 375, 384 (S.D.N.Y.1998) (denying leave to amend where plaintiff had already amended complaint once).

[18]     *Cuoco*, 222 F.3d at 112 (finding that repleading would be futile) [citation omitted]; *see also Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice.") (affirming, in part, dismissal of claim with prejudice) [citation omitted]; *see, e.g.*, *See Rhodes v. Hoy*, 05-CV-0836, 2007 WL 1343649, at *3, 7 (N.D.N.Y. May 5, 2007) (Scullin, J., adopting Report-Recommendation of Peebles, M.J.) (denying *pro se* plaintiff opportunity to amend before dismissing his complaint because the error in his complaint–the fact that plaintiff enjoyed no constitutional right of access to DOCS' established grievance process–was substantive and not formal in nature, rendering repleading futile); *Thabault v. Sorrell*, 07-CV-0166, 2008 WL 3582743, at *2 (D. Vt. Aug. 13, 2008) (denying *pro se* plaintiff opportunity to amend before dismissing his complaint because the errors in his complaint–lack of subject-matter jurisdiction and lack of standing–were substantive and not formal in nature, rendering repleading futile) [citations omitted]; *Hylton v. All Island Cob Co.*, 05-CV-2355, 2005 WL 1541049, at *2 (E.D.N.Y. June 29, 2005) (denying *pro se* plaintiff opportunity to amend before dismissing his complaint arising under 42 U.S.C. § 1983 because the errors in his complaint–which included the fact that plaintiff alleged no violation of either the

However, while this special leniency may somewhat loosen the procedural rules governing the form of pleadings (as the Second Circuit has observed),[19] it does not completely relieve a *pro se* plaintiff of the duty to satisfy the pleading standards set forth in Rules 8, 10 and 12.[20]  Rather, as both the Supreme Court and Second Circuit have repeatedly recognized, the requirements set forth in Rules 8, 10 and 12 are procedural rules that even *pro se* civil rights plaintiffs must follow.[21]  Stated more plainly, when a plaintiff is proceeding *pro se*, "all normal

Constitution or laws of the United States, but only negligence–were substantive and not formal in nature, rendering repleading futile); *Sundwall v. Leuba*, 00-CV-1309, 2001 WL 58834, at *11 (D. Conn. Jan. 23, 2001) (denying *pro se* plaintiff opportunity to amend before dismissing his complaint arising under 42 U.S.C. § 1983 because the error in his complaint–the fact that the defendants were protected from liability by Eleventh Amendment immunity–was substantive and not formal in nature, rendering repleading futile).

[19]     *Sealed Plaintiff v. Sealed Defendant # 1*, No. 06-1590, 2008 WL 3294864, at *5 (2d Cir. Aug. 12, 2008) ("[The obligation to construe the pleadings of *pro se* litigants liberally] entails, at the very least, a permissive application of the rules governing the form of pleadings.") [internal quotation marks and citation omitted]; *see also Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983) ("[R]easonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training . . . should not be impaired by harsh application of technical rules.") [citation omitted].

[20]     *See Prezzi v. Schelter*, 469 F.2d 691, 692 (2d Cir.1972) (extra liberal pleading standard set forth in *Haines v. Kerner*, 404 U.S. 519 [1972], did not save *pro se* complaint from dismissal for failing to comply with Fed. R. Civ. P. 8]); *accord*, *Shoemaker v. State of Cal.*, 101 F.3d 108 (2d Cir. 1996) (citing *Prezzi v. Schelter*, 469 F.2d 691 [unpublished disposition cited only to acknowledge the continued precedential effect of *Prezzi v. Schelter*, 469 F.2d 691, within the Second Circuit]; *accord*, *Praseuth v. Werbe*, 99 F.3d 402 (2d Cir.1995).

[21]     *See McNeil v. U.S.,* 508 U.S. 106, 113 (1993) ("While we have insisted that the pleadings prepared by prisoners who do not have access to counsel be liberally construed . . .  we have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel."); *Faretta v. California*, 422 U.S. 806, 834, n.46 (1975) ("The right of self-representation is not a license . . . not to comply with relevant rules of procedural and substantive law."); *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006) (*pro se* status "does not exempt a party from compliance with relevant rules of procedural and substantive law") [citation omitted]; *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983) (*pro se* status "does not exempt a party from compliance with relevant rules of procedural

rules of pleading are not absolutely suspended."[22]

III.   **ANALYSIS**

   A.   **Claims Regarding Plaintiff's Assistive Devices**

Plaintiff alleges that Defendant Dr. Butt wrongfully denied him the use of his cane, knee

brace, and back brace from August 25, 2005, through December 2005.  I have construed

Plaintiff's complaint as asserting an Eighth Amendment claim for denial of adequate medical

care.  Defendants argue that the claim should be dismissed because (1) Plaintiff failed to serve

Dr. Butt; and (2) Plaintiff failed to exhaust his administrative remedies.  (Dkt. No. 40-28 at 3, 8-

10, 22-23.)  Defendants are correct.

   1.   Failure to Serve Defendant Dr. Butt

Due to miscommunication between the U.S. Marshal's Service and defense counsel, an

acknowledgment of service on Defendant Dr. Butt was filed on December 5, 2007.  (Dkt. Nos.

23, 30.)  After defense counsel informed the Court that he was not authorized to accept service

for Defendant Dr. Butt, who is an independent contractor rather than a Broome County

employee, the acknowledgment of service was stricken.  (Dkt. No. 32.)  In the order striking the

acknowledgment, I directed the Clerk's office to mail Plaintiff a new summons form for Plaintiff

to complete and return to the Clerk's office to effect service on Defendant Dr. Butt.  *Id.*  To date,

the Clerk's office has not received a new summons form and Defendant Dr. Butt has not been

---

and substantive law") [citation omitted]; *cf. Phillips v. Girdich*, 408 F.3d 124, 128, 130 (2d Cir. 2005) (acknowledging that *pro se* plaintiff's complaint could be dismissed for failing to comply with Rules 8 and 10 if his mistakes either "undermine the purpose of notice pleading []or prejudice the adverse party").

   [22]   *Stinson v. Sheriff's Dep't of Sullivan Cty.*, 499 F. Supp. 259, 262 & n.9 (S.D.N.Y. 1980).

served.

Under the Federal Rules of Civil Procedure, a defendant must be served with the summons and complaint within ***120 days*** after the filing of the complaint.  Fed. R. Civ. P. 4(m).  This 120-day service period is shortened, or "expedited," by the Court's Local Rules of Practice (and the Court's General Order 25), which provide that all defendants must be served with the summons and complaint within ***sixty (60) days*** of the filing of the complaint.  N.D.N.Y. L.R. 4.1(b) [emphasis added].  Here, more than 120 days have elapsed since the filing of the amended complaint on February 8, 2007, and Defendant Dr. Butt has not been served.  As a result, Plaintiff is in violation of both the Federal Rules of Civil Procedure and the Local Rules of Practice for this Court.  I therefore recommend that all claims against Defendant Dr. Butt be dismissed.

2.      Failure to Exhaust Administrative Remedies

Even if Defendant Dr. Butt had been timely served, Plaintiff's claims against him would be, as Defendants correctly note, subject to dismissal for failure to exhaust administrative remedies.  (Dkt. No. 40-28 at 3, 8-10.)

The Prison Litigation Reform Act of 1995 ("PLRA") requires that prisoners who bring suit in federal court must first exhaust their available administrative remedies: "No action shall be brought with respect to prison conditions under §1983 . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."[23]  "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege

---

[23]      42 U.S.C. § 1997e.

excessive force or some other wrong."[24]

The Second Circuit has held that a three-part inquiry is appropriate where a defendant contends that a prisoner has failed to exhaust his available administrative remedies, as required by the PLRA.[25]  First, "the court must ask whether [the] administrative remedies [not pursued by the prisoner] were in fact 'available' to the prisoner."[26]  Second, if those remedies were available, "the court should . . . inquire as to whether [some or all of] the defendants may have forfeited the affirmative defense of non-exhaustion by failing to raise or preserve it . . . or whether the defendants' own actions inhibiting the [prisoner's] exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense."[27]  Third, if the remedies were available and some of the defendants did not forfeit, and were not estopped from raising, the non-exhaustion defense, "the Court should consider whether 'special circumstances' have been plausibly alleged that justify the prisoner's failure to comply with the administrative procedural requirements."[28]

To be "available" for purposes of the PLRA, an administrative remedy must afford "the possibility of some relief for the action complained of."  *Booth v. Churner*, 532 U.S. 731, 738 (2001).  In addition, a court deciding this issue must apply an objective test and determine whether a similarly situated person of ordinary firmness would have deemed the administrative

---

[24]        *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

[25]        *See Hemphill v. State of New York*, 380 F.3d 680, 686, 691 (2d Cir. 2004).

[26]        *Hemphill*, 380 F.3d at 686 (citation omitted).

[27]        *Id.* [citations omitted].

[28]        *Id*. [citations and internal quotations omitted].

remedy available.  *Hemphill*, 380 F.3d at 688.

Here, it is undisputed that administrative remedies were available to Plaintiff.  The Broome County Jail has a grievance procedure.  The grievance procedure is described in the Inmate Handbook, which was provided to Plaintiff.  (Dkt.  40-27 at ¶ 17; Dkt. No. 40-22 at ¶ 5.) Although Plaintiff states in his amended complaint that he 'wrote to administration' (Dkt. No. 9 at 9), a review of Plaintiff's inmate file and of all grievances filed at Broome County Jail from August 1, 2005, to December 31, 2005, revealed that Plaintiff did not file any grievances during that period.  (Dkt. No. 40-27 at ¶ 20; Dkt. No. 40-22 at ¶ 9.)

Defendants have not forfeited the administrative remedy defense.  They raised it in their answer to the amended complaint.  (Dkt. No. 31 at ¶ 18.)  Nor are they estopped from asserting the defense.  Plaintiff states in his opposition that the notion that he failed to exhaust his administrative remedies is "a farce" because the policy at Broome County Jail was "they determine if a grievance form is necessary."  (Dkt. No. 44 (Memorandum of Law) at  ¶ 10.) However, Plaintiff does not assert that he ever requested a grievance form, much less that he requested one and was denied.  *Compare Ziemba v. Wezner*, 366 F.3d 161, 162-63 (2d Cir. 2004)(district court directed to consider whether defendants were estopped from asserting exhaustion defense where inmate alleged that he was beaten, threatened, denied grievance forms, and transferred to another prison).

The Court must next determine whether special circumstance exist justifying Plaintiff's failure to exhaust his administrative remedies.  Justification "must be determined by looking at the circumstances which might understandably lead ... uncounselled prisoners to fail to grieve in the normally required way."  *Giano v. Good*, 380 F.3d 670, 678 (2d Cir. 2004).  No such

circumstances exist here.  Therefore, Plaintiff's failure to exhaust his administrative remedies regarding his medical claim is not justified and I recommend that the claim be dismissed.

   **B.    Claims Regarding the Incident with Defendant Simmons**

   Plaintiff alleges that Defendants Simmons and Thayne violated his constitutional rights by confining him to the SHU when he questioned whether he had been given the correct medication.  (Dkt. No. 9 at 7-8, 11.)  In opposition to the motion for summary judgment, Plaintiff claims for the first time that the disciplinary hearing that followed Simmons' misbehavior report was conducted unfairly.  (Dkt. No. 44 (Statement of Material Facts) at ¶ 12; Dkt. No. 44 (Memorandum of Law) at ¶ 11.)  I have construed the complaint as asserting due process and Eighth Amendment claims against both these defendants.

   Defendants argue that they are entitled to summary judgment of these claims because (1) Plaintiff did not exhaust his administrative remedies; and (2) Plaintiff was not deprived of a cognizable liberty interest because he served only 10 days in keeplock.  Defendants are correct.  Moreover, as discussed more fully below, Plaintiff's Eighth Amendment claim against Defendants Simmons and Thayne should be dismissed *sua sponte* pursuant to 28 U.S.C. 1915(e)(2)(B).  Finally, as discussed more fully below, I recommend that the Court decline to address Plaintiff's belatedly-raised due process claim regarding the conduct of his disciplinary hearing.

   1.    Failure to Exhaust Administrative Remedies

   Plaintiff did not appeal his 10-day keeplock sentence to Defendant Jail Administrator Mark Smolkinksy.  (Dkt. No. 40-22 at ¶ 13.)  Defendants argue that, as a result, Plaintiff failed to exhaust his administrative remedies and the claim should be dismissed.  (Dkt. No. 40-28 at 4,

10.)  Defendants are correct.

There was an administrative remedy available to Plaintiff because he could have appealed his keeplock sentence to the Jail Administrator.  (Dkt. No. 40-27 at ¶ 30; Dkt. No. 40-22 at ¶ 13.) As discussed above, Defendants did not waive the defense and there is no evidence before the Court suggesting that they should be estopped from asserting it.  As discussed above, this is not a case where special circumstances justify Plaintiff's failure to exhaust his administrative remedies.  Therefore, I recommend that the Court grant Defendants' motion for summary judgment and dismiss the due process claims against Defendants Simmons and Thayne.

      2.    <u>Merits of Due Process Claim</u>

Defendants argue that even if Plaintiff had exhausted his administrative remedies, his due process claim should be dismissed because a 10-day keeplock sentence does not constitute the loss of a protected liberty interest.  (Dkt. No. 40-28 at 14-16.)  Defendants are correct.

In order to state a claim for violation of his procedural due process rights, a plaintiff must allege facts plausibly suggesting that (1) he was deprived of a liberty interest; (2) without due process of law.  *Tellier v. Fields*, 280 F.3d 69, 79-80 (2d Cir. 2000).

An inmate has a liberty interest in remaining free from a confinement or restraint where (1) the state has granted its inmates, by regulation or statute, an interest in remaining free from that particular confinement or restraint; and (2) the confinement or restraint imposes "an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  *Sandin v. Conner*, 515 U.S. 472, 484 (1995); *Tellier*, 280 F.3d at 80; *Frazier v. Coughlin*, 81 F.3d 313, 317 (2d Cir. 1996).  Plaintiff cannot meet the second prong of this test.

In the Second Circuit, determining whether a disciplinary confinement constituted an

"atypical and significant hardship" requires examining "the extent to which the conditions of the

disciplinary segregation differ from other routine prison conditions and the duration of the

disciplinary segregation compared to discretionary confinement." *Palmer*, 364 F.3d at 64.

Where a prisoner has served less than 101 days in disciplinary segregation, the confinement

constitutes an "atypical and significant hardship" only if "the conditions were more severe than

the normal SHU conditions[29]." *Palmer*, 364 F.3d at 65.  Here, Plaintiff has not alleged, and the

evidence does not show, that the conditions he experienced during his 10-day keeplock sentence

were sufficiently severe to raise a due process cause of action.  Therefore, I find that Plaintiff's

due process claim would be subject dismissal even if he had exhausted his administrative

remedies and recommend this as an alternate ground for dismissal.

       3.     <u>Eighth Amendment Claim</u>

       Plaintiff alleges that after Defendant Simmons directed that he be placed in the SHU

pending his disciplinary hearing, he "was forced to carry my belongings to and fro without cane,

back brace, knee brace when my medical records clearly state no lifting,  [prolonged] standing,

[or prolonged] walking."  (Dkt. No. 9 at 7.)  It is not clear from the amended complaint who

"forced" Plaintiff to do so.  However, I will assume for the purposes of this Report-

Recommendation that this claim is directed at Defendants Simmons and Thayne.

       To prevail on an Eighth Amendment claim of inadequate medical care, a plaintiff must

show two things: (1) that the plaintiff had a *sufficiently serious* medical need; and (2) that the

defendant was *deliberately indifferent* to that serious medical need.  *Estelle v. Gamble*, 429 U.S.

---

      [29]      "Normal" SHU conditions include being kept in solitary confinement for 23
hours per day, provided one hour of exercise in the prison yard per day, and permitted two
showers per week.  *Ortiz v. McBride*, 380 F.3d 649, 655 (2d Cir. 2004).

97, 104 (1976); *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998).

To establish deliberate indifference, an inmate must prove that (1) the defendant was aware of facts from which the inference could be drawn that the inmate had a serious medical need, and (2) the defendant actually drew that inference. *Farmer*, 511 U.S. at 837; *Chance*, 143 F.3d at 702-703. Non-medical personnel may exhibit deliberate indifference by deliberately defying the express instructions of a prisoner's doctors or deliberately interfering with medically prescribed treatment solely for the purpose of causing the inmate unnecessary pain. *Gill v. Mooney*, 824 F.2d 192, 196 (2d Cir. 1987).

Here, even if one assumes that Plaintiff's degenerative spine ailment and lumbar disc bulges were sufficiently serious, there is no evidence that Defendants Simmons and Thayne were deliberately indifferent. There is no evidence that either defendant was aware of facts from which the inference could be drawn that Plaintiff had a serious medical need, or that they in fact drew that inference. At the time of the incident with Defendant Simmons, Plaintiff was not yet in possession of his cane, back brace, or knee brace. Thus there was no visual indication of Plaintiff's condition. There is no evidence, and Plaintiff does not allege, that Defendant Simmons or Thayne had read his medical file to become aware of any restrictions imposed on Plaintiff's movement. Therefore, I recommend that the Court dismiss any Eighth Amendment medical claim against Defendants Simmons and Thayne *sua sponte* pursuant to 28 U.S.C. § 1915(e)(2)(B).

4.     Claims Regarding Fairness of Disciplinary Hearing

In his opposition to the motion for summary judgment, Plaintiff appears to argue for the first time that his disciplinary hearing was conducted unfairly. (Dkt. No. 44 (Statement of

22

Material Facts) at ¶ 12; Dkt. No. 44 (Memorandum of Law) at ¶ 11.)  Courts are under a duty to

liberally construe *pro se* pleadings as asserting all legal theories supported by the facts.  *See*

*McEachin v. McGuinnis*, 357 F.3d 197, 199 n.2 (2d Cir. 2004).  Here, however, Plaintiff did not

include any facts regarding this allegation in his amended complaint and did not name the

hearing officer as a defendant.  Thus, this is not a situation where Plaintiff has simply failed to

specifically identify the correct legal predicate for a claim.  *Compare McEachin* (considering

Religious Land Use and Institutionalized Persons Act claim although not raised in complaint,

because facts in complaint supported RLUIPA claim)*; Smith v. Nuttal,* No. 04-CV-0200, 2007

WL 837111 at *3 & n. 5 (W.D.N.Y. Mar. 14, 2007) ("Although Plaintiff does not specifically

identify RLUIPA as a legal predicate for his § 1983 claim, given Plaintiff's pro se status and the

RLUIPA's applicability to Plaintiff's claim, the court construes the Complaint as asserting a

violation of the RLUIPA").  Therefore, it is recommended that the Court not consider this

belatedly asserted claim.

### C.      Claims Regarding the Incidents with Defendant Valls

Plaintiff alleges that Defendant Valls used excessive force and discriminated against him,

that Defendant Irwin wrongfully revoked his contact visiting privileges as a result, that

Defendants Sutton, Irwin, and Smolinksy failed to investigate Defendant Valls' actions, and that

Defendant Harder failed to respond to Plaintiff's grievances.  I have construed the complaint as

asserting the following causes of action arising from these incidents: (1) an Eighth Amendment

excessive force claim against Defendant Valls; (2) an equal protection claim against Defendant

Valls; (3) a due process/Eighth Amendment claim against Defendant Irwin; (4) a due process

claim alleging that Defendants Sutton, Irwin, and Smolinsky failed to conduct proper

investigations; and (5) a claim that Defendant Harder failed to respond to Plaintiff's grievance.

     1.     <u>Eighth Amendment Excessive Force</u>

Defendants argue that Plaintiff's Eighth Amendment excessive force claim against Defendant Valls must be dismissed because "[a]t no point in time did any of the defendants strike the plaintiff or use force of any kind." (Dkt. No. 40-28 at 21.) Defendants are correct.

The factors to be weighed in determining whether an officer's use of force was excessive and thus violated the Eighth Amendment include (1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of injury inflicted; and (4) whether the force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically for the very purpose of causing harm. *Whitley v. Abers*, 475 U.S. 312, 319 (1986); *Hudson v. McMillian*, 503 U.S. 1, 7 (1992).

Weighing the factors here, it is apparent that no genuine issue of material fact exists that Defendant Valls used excessive force. In fact, even Plaintiff admits that Defendant Valls used no force at all. Rather, Plaintiff asserts that Defendant Valls kicked "at" his head and "almost kicked" his face. (Dkt. No. 9 at 10-11; Dkt. No. 44 (Statement of Facts) at ¶ 15.) Therefore, I recommend that the Court grant Defendants' motion for summary judgment and dismiss the Eighth Amendment excessive force claim against Defendant Valls[30].

     2.     <u>Race Discrimination</u>

Plaintiff alleges that Defendant Valls reprimanded and punished him when he stood up in

---

[30]     To the extent that Plaintiff's claim against Defendant Valls is based on Valls' snarling at him and Valls' comments to Plaintiff and his fiancé, I note that "[i]t is well established that mere threatening language and gestures of a custodial officer do not ... amount to constitutional violations." *Alnutt v. Cleary*, 913 F. Supp. 160, 165 (W.D.N.Y. 1996)(punctuation omitted).

the visiting room, yet allowed a white man to "jump up and run all over the visit floor".  (Dkt.

No. 9 at 5, 11.)  Defendants characterize this allegation as an attempt to state a cause of action

under 42 U.S.C. § 1981.  (Dkt. No. 40-28 at 22.)  I find that it is more readily analyzed as an

equal protection claim under 42 U.S.C. § 1983, but that it should be dismissed because Plaintiff

has not raised a genuine issue of material fact that Defendant Valls intentionally or purposefully

discriminated against Plaintiff.

        a.     *42 U.S.C. § 1981*

Plaintiff cannot assert a claim under 42 U.S.C. § 1981 because 42 U.S.C. § 1983 provides

the exclusive federal damages remedy for the violation of the rights guaranteed by § 1981 when

the claim is pressed against a state actor.  *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 735

(1989); *Whaley v. City Univ. of New York*, 555 F. Supp. 2d 381, 400-01 (S.D.N.Y. 2008)[31].

---

[31]    Even if 42 U.S.C. § 1983 did not provide the exclusive federal damages remedy,
any claim by Plaintiff that Defendants violated his rights under 42 U.S.C. § 1981 may also have
been foreclosed because Plaintiff did not have a potential or actual contractual relationship with
Defendant Valls.  42 U.S.C. § 1981(a) states that: "All persons within the jurisdiction of the
United States shall have the same right in every State and Territory to make and enforce
contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and
proceedings for the security of persons and property as is enjoyed by white citizens, and shall be
subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to
no other."  In *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470 (2006), a case brought under the
"make and enforce contracts" clause of § 1981, the Supreme Court held that "nothing in the text
of § 1981 suggests that it was meant to provide an omnibus remedy for *all* racial injustice ...
Consistent with our prior case law, and as required by the plain text of the statute, we hold that a
plaintiff cannot state a claim under § 1981 unless he has (or would have) rights under the existing
(or proposed) contract that he wishes to make and enforce."  *Domino's*, 546 U.S. at 479.
Following the *Domino's* decision, courts have split on whether plaintiffs can bring actions under
the other clauses of § 1981 (such as the "full and equal benefit" clause) in the absence of a
contractual relationship.  *Compare Myers v. Johns,* No. 9:05-CV-1448 (GTS/GJD), 2008 WL
5115249, at *16 (N.D.N.Y. Dec. 4, 2008) (New York State prisoner who alleged that officials at
Great Meadow Correctional Facility racially discriminated against him by preventing him from
taking the General Equivalency Diploma examination could not state a §1981 claim because he
"failed to identify an impaired contractual relationship under which he has rights.") and *Collier v.*

Defendants here are state actors.  Therefore, Plaintiff's claims cannot be raised under 42 U.S.C. §

1981.

    Even if Plaintiff's discrimination claim could be raised under 42 U.S.C. § 1981, it would

be subject to dismissal because, as Defendants note, Plaintiff has not raised a genuine issue of

material fact that Defendant Valls acted with purposefully discriminatory intent.

> When a § 1981 claim is based upon circumstantial evidence of
> discrimination, the claim is reviewed under the three-step, burden-
> shifting framework established by the Supreme Court in *McDonnell
> Douglas Corp. v. Green* ... Under this approach, the plaintiff bears the
> initial burden of establishing a prima facie case of discrimination.  A
> plaintiff's burden in presenting prima facie evidence of
> discriminatory treatment is minimal, but the required showing
> includes the identification of circumstances giving rise to an inference
> of discrimination on the basis of race.  When plaintiffs seek to draw
> inferences of discrimination by showing that they were similarly
> situated in all material respects to the individuals to whom they
> compare themselves, their circumstances need not be identical, but
> there should be a reasonably close resemblance of facts and
> circumstances.  If the plaintiff succeeds in making this prima facie
> showing, the burden shifts to the defendant to articulate a legitimate,
> non-discriminatory reason that motivated the adverse action ... The

---

*Plumbers Union Local No. 1*, No. 05 CV 2191, 2007 WL 1673047, at *2, n. 5 (E.D.N.Y. June 7,
2007) (dismissing African-American plumber's § 1981 action alleging that union discriminated
against her by referring fewer assignments to her than to other plumbers because "defendants
were not contractually bound to refer or assign [the plumber] any of the ... jobs she claims she
was denied.") with *Mazloum v. D.C. Metro. Police Dept.*, 522 F. Supp. 2d 24 (D.D.C. 2007)
("Although it is true that some of the Supreme Court's statements could arguably be read to
imply [that the holding in *Domino's* precludes any claim under Section 1981 that does not
involve a strict contractual relationship], a close reading reveals that the Supreme Court's
holding was limited to the 'make and enforce' contracts clause of Section 1981.  Because
plaintiff's claim in this case arises out of the 'full and equal benefit' clause of Section 1981, the
Court concludes that a lack of contractual privity does not foreclose plaintiff's claim.") *and
Feacher v. Intercontinental Hotels Group*, 563 F. Supp. 2d 389, 402 (N.D.N.Y. 2008)(McAvoy,
J.) ("The discrimination must concern *one of the activities enumerated in § 1981*.  These
activities include the rights to make and enforce contracts, to sue, and to the full and equal
benefit of all laws and proceedings for the security of persons and property") (emphasis added).

> defendant's burden is one of production, not persuasion.  If the
> defendant meets this burden, the presumption of discrimination that
> arises from the plaintiff's prima facie showing disappears and the
> plaintiff must then carry his ultimate burden of persuading the trier of
> fact that the defendant intentionally discriminated against him.  Under
> this framework, the defendant will thus be entitled to summary
> judgment unless the plaintiff can point to evidence that reasonably
> supports a finding of prohibited discrimination.

*Feacher v. Intercontinental Hotels Group*, 563 F. Supp. 2d 389, 402-03 (N.D.N.Y. 2008)

(citations and some punctuation omitted).

Here, Plaintiff states in opposition to the motion for summary judgment that "seconds

after" Defendant Valls told him to sit down, a Caucasian inmate "was allowed to run all over the

visit floor[32]."  (Dkt. No. 44 (Memorandum of Law) at ¶ 7.)  Plaintiff states that this fact serves to

"verify the facts of my claim of discrimination, or else why would a Caucasian man be allowed

to leave his seat without reprimand?"  *Id.*  Plaintiff's personal belief that Defendant Valls was

motivated by racism is insufficient to meet his burden.  *Gibralter v. City of New York*, 612 F.

Supp. 125 (E.D.N.Y. 1985)(applying § 1981 to prisoner's claim against officials at Rikers Island,

prior to Supreme Court's decision in *Jett*).

Even if Plaintiff had met his initial burden, Defendant Valls has articulated a legitimate,

non-discriminatory reason that motivated his order to Plaintiff to sit down.  Defendant Valls does

not mention the incident with the Caucasian inmate in his affidavit filed in support of

Defendants' motion for summary judgment.  He states, however, that he instructed Plaintiff to sit

down because (1) he was not aware that Plaintiff had permission to stand; and (2) Visitation Rule

---

[32]     This assertion contradicts Plaintiff's complaint, which alleges that Defendant
Valls ordered Plaintiff to sit down "in the start of the month of October 2006" and allowed the
Caucasian inmate to stand up on October 27, 2006.  (Dkt. No. 9 at 10, 11.)

#6 states that inmates and visitors must "remain seated at all times during their visit." (Dkt. No. 40-25 at ¶ 3.) Plaintiff has not pointed to evidence reasonably supporting a finding of prohibited discrimination. Therefore, to the extent that Plaintiff has asserted a claim under 42 U.S.C. § 1981, I recommend that it be dismissed.

> b.   *Equal Protection*

As discussed above, Plaintiff's discrimination claim is more properly analyzed as an equal protection claim under 42 U.S.C. § 1983. "To prove a violation of the Equal Protection Clause ... a plaintiff must demonstrate that he was treated differently than others similarly situated *as a result of intentional or purposeful discrimination*." *Phillips v. Girdich*, 408 F.3d 124, 129 (2d Cir. 2005)(emphasis added).

Here, as discussed above, Plaintiff has not alleged any facts or presented any evidence showing that Defendant Valls acted with discriminatory intent. He has not alleged, for instance, that Defendant Valls used racial epithets. *Compare Phillips*, 408 F.3d at 126 (prisoner sufficiently alleged discriminatory intent by alleging that corrections officers used racial slurs against prisoner and his girlfriend). Therefore, I recommend that the Court dismiss Plaintiff's claim of discrimination.

> 3.   <u>Failure to Conduct Proper Investigation</u>

Plaintiff alleges that Defendants Sutton, Irwin, and Smolinsky failed to properly investigate the incidents involving Defendant Valls. I have construed Plaintiff's complaint as asserting a due process cause of action against these Defendants. Defendants argue that the claims against these Defendants should be dismissed. (Dkt. No. 40-28 at 17-18.) Defendants are correct. Prisoners do not have a due process right to a thorough investigation of grievances.

*Torres v. Mazzuca*, 246 F. Supp. 2d 334, 341-42 (S.D.N.Y. 2003).  Therefore, I recommend that the Court grant Defendants' motion for summary judgment and dismiss the claims against Defendants Sutton, Irwin, and Smolinsky.

      4.     <u>Claim Against Defendant Irwin Regarding Loss of Contact Visit Privileges</u>

      Plaintiff alleges that Defendant Lt. Irwin viewed the tape of the incident between Defendant Valls and Plaintiff.  (Dkt. No. 9 at 6.)  After viewing the tape, Defendant Irwin revoked Plaintiff's contact visits and instructed an officer to confine Plaintiff to his cell.  (Dkt. No. 9 at 6.)  Several days later, Defendant Jail Administrator Smolinksy restored Plaintiff's contact visits.  *Id*.  Plaintiff alleges that Defendant Irwin violated his constitutional rights.

      Analyzing this claim is complicated by the fact that neither Plaintiff nor Defendants have informed the Court whether Plaintiff was a pretrial detainee or whether he had been convicted as of October 27, 2006.  Defendants state only that Plaintiff "was incarcerated at the Facility on two separate occasions, the first being from August 23, 2005, to December 30, 2005, and the second from August 18, 2006, to March 15, 2007, at which point he was transferred on to state prison." (Dkt. No. 40-27 at ¶ 13; Dkt. No. 40-22 at ¶ 4.)  The claims of pretrial detainees and the claims of sentenced prisoners regarding the denial of contact visits are analyzed differently.  "Due process requires that a pretrial detainee not be punished.  A sentenced inmate, on the other hand, may be punished, although that punishment may not be 'cruel and unusual' under the Eighth Amendment." *Bell v. Wolfish*, 441 U.S. 520, 535 n. 16 (1979).

      If Plaintiff had been sentenced as of October 27, 2006, and the Eighth Amendment applies, he has failed to state a claim.  From a review of the relevant law, it appears that, in a majority (if not the entirety) of the circuits–including the Second Circuit–the denial of contact

visitation does not amount to the infliction of pain at all, and that, even it did, it does not amount

to the sort of wanton (and penologically unjustified) infliction of pain prohibited by the Eighth

Amendment[33].

---

[33] **Supreme Court:** *See Overton v. Bazzetta*, 539 U.S. 126, 136-137 (2003) (prison regulation that subjected inmates with two substance-abuse violations to ban of at least two years on all visitation privileges did not create inhumane prison conditions, or deprive the inmate of basic necessities, under Eighth Amendment); *Block v. Rutherford*, 468 U.S. 576, 577, 586-89 (1984) (jail's blanket ban on contact visiting privileges with spouses, relatives, children and friends, was not unconstitutional).

**Second Circuit:** *See Tafari v. Bennett*, 00-CV-0405, 2001 U.S. Dist. LEXIS 25321, at *13-14 (W.D.N.Y. Sept. 28, 2001) ("The denial of the plaintiff's contact visitations for the period in question [18 months] in this case [where plaintiff was convicted of disciplinary charge of illegal possession of a weapon] did not constitute a violation of the plaintiff's Eighth Amendment rights.") [citation omitted]; *Smith v. Coughlin*, 577 F. Supp. 1055, 1060-61 & n.8 (S.D.N.Y. 1983) (finding that the conditions of plaintiff's confinement, which included restriction on contact visits, did not violate Eighth Amendment) [citation omitted].

**Third Circuit:** *See Thrower v. N.J. Dept. of Corr.*, 07-CV-3434, 2007 U.S. Dist. LEXIS 66252, at *13-14 (D. N.J. Sept. 7, 2007) ("[T]he Court finds that Plaintiff's [indefinite] loss of visitation privileges [following his disciplinary charge of refusing to submit to drug testing] did not violate his Eighth Amendment rights, and will dismiss Plaintiff's claims based on loss of visitation for failure to state a claim upon which relief may be granted.").

**Sixth Circuit:** *See Conway v. Wilkinson*, 05-CV-0820, 2007 U.S. Dist. LEXIS 21177, at *10-11 (S.D. Ohio March 26, 2007) ("As far as the Court is aware, no case has held that restricting a prisoner either to non-contact or limited contact visits violates that amendment's ban on cruel and unusual punishment.") [citations omitted]

**Seventh Circuit:** *See Saleem v. Helman*, No. 96-2502, 1997 U.S. App. LEXIS 22572, at *6 (7th Cir. Aug. 21, 1997) ("We have previously held that a denial of contact visitation altogether does not violate the Eighth Amendment.") [citation omitted]; *Nkrumah v. Clark*, No. 91-2466, 1992 U.S. App. LEXIS 25067, at *12 (7th Cir. Sept. 24, 1992) (""[D]enial of contact visitation simply does not amount to the infliction of pain [under the Eighth Amendment]. . . . Even if this limitation did impose on Nkrumah some degree of pain, the Eighth Amendment would not forbid restricting inmates in disciplinary units to non-contact units unless the pain were wantonly inflicted or unrelated to rational penological objectives [and this restriction was not either of those things].") [internal citations omitted]; *Caldwell v. Miller*, 790 F.2d 589, 601, n.16 (7th Cir. 1986) (holding that a denial of contact visitation altogether does not violate the Eighth Amendment) [citation omitted]; *Stojanovic v. Humphreys*, 06-CV-0318, 2006

The issue is more complicated if Plaintiff was a pretrial detainee as of October 27, 2006.

When evaluating the conditions of pretrial detention, a "court must decide whether the disability

is imposed for the purpose of punishment or whether it is but an incident of some other

legitimate governmental purpose." *Bell*, 441 U.S. at 538. Here, there was undeniably an express

intent to punish Plaintiff by revoking his contact visiting privileges. As Defendant Irwin states in

an affidavit filed in support of the motion for summary judgment, he changed Plaintiff's

visitation status "based solely on his failure to obey the Visitation Rules of the Facility and the

directions of Officer Valls." (Dkt. No. 40-18 at ¶ 6.) This distinguishes this case from cases like

*Block v. Rutherford*, 468 U.S. 576 (1984), in which there was a blanket ban on contact visits due

to security concerns.

Defendant Irwin did not follow proper procedures before punishing Plaintiff. Defendants

admit that Defendant Irwin did not strictly comply with N.Y. Comp. Codes R. & Regs. tit. 9, §

---

U.S. Dist. LEXIS 73213, at *10-11 (E.D. Wisc. Oct. 6, 2006) ("Denial of contact visitation, however, does not violate the Eighth Amendment.") [citation omitted].

**Ninth Circuit:** *See Toussaint v. McCarthy*, 801 F.2d 1080, 1113-14 (9th Cir. 1986) (restrictions on non-contact visits not an Eighth Amendment violation because, "Denial of contact visitation simply does not amount to the infliction of pain. . . . Even if denial of contact visitation amounted to an infliction of pain, the [E]ighth [A]mendment would not prohibit the denial unless the pain were inflicted wantonly and without penological justification. . . . To the extent that denial of contact visitation is restrictive and even harsh, it is part of the penalty that criminals pay for their offenses against society.") [citations omitted].

**Tenth Circuit:** *See Ricco v. Conner*, 146 F. App'x 249, 255 (10th Cir. 2005) ("[W]e conclude that the five-year restriction [on all visitation privileges] imposed in this case does not violate the Eighth Amendment].."); *Brown v. PharmChem Lab., Inc.*, 92-CV-3010, 1992 U.S. Dist. LEXIS 15758, at *7 (D. Kan. Sept. 30, 1992) ("The court . . . finds the imposition of loss of visitation [for one year] was a permissible sanction [for a disciplinary conviction of drug possession] and rejects plaintiff's contention the penalty imposed violates the Eighth Amendment."), *aff'd*, 2 F.3d 1160 (10th Cir. 1993).

7008.8 (2009) when revoking Plaintiff's privileges.  (Dkt. No. 40-28 at 17; Dkt. No. 40-12.)

Pursuant to that regulation, any decision to revoke contact visit privileges "shall be made by the

chief administrative officer in writing, and shall state the specific facts and reasons underlying

such determination."  N.Y. Comp. Codes R. & Regs. tit. 9, § 7008.8(c) (2009).  Defendant Irwin

is not the chief administrative officer.  Arguably, then, if Plaintiff was a pretrial detainee on

October 27, 2006,  Defendant Irwin violated his due process rights.

However, even if Plaintiff was a pretrial detainee and Defendant Irwin's actions violated

his due process rights, Plaintiff's cause of action is subject to dismissal.  Courts in the Second

Circuit apply a

> no-harm, no-foul approach to due process violations involving
> administrative proceedings in prisons. *See, e.g., Cespedes v.
> Coughlin,* 956 F.Supp. 454, 473-474 (S.D.N.Y.1997) (holding that
> procedurally defective disciplinary process which resulted in the
> deprivation of good-time credits created no basis for § 1983 remedy
> where credits were restored through administrative appeal before their
> loss had an effect on length of incarceration); *Silva v. Sanford,* No. 91
> Civ. 1776, 1998 WL 205326, at *13 (S.D.N.Y. April 24, 1998)
> (holding that where administrative reversal of procedurally defective
> Tier III prison disciplinary proceedings resulted in a sentence of a
> longer period of time than the time served in Special Housing Unit,
> under the defective proceeding there was no basis for a remedy under
> § 1983 because there had been no harm from the time actually served
> in segregation). Under this approach, an injury suffered as a result of
> a due process violation can be cured where subsequent events nullify
> the injury.

*Ford v. Nassau County Executive,* 41 F. Supp. 2d 392, 399-400 (E.D.N.Y.1999).

Here, Defendant Jail Administrator Smolinksy restored Plaintiff's contact visiting

privileges after 10 days, explaining that the matter "should have been referred to the disciplinary

hearing officer.  No hearing was scheduled or convened."  (Dkt. No. 40-12.)  Plaintiff does not

allege, and the evidence does not show, that he missed any contact visits during that 10-day

period.  Thus, there is no basis for a remedy under 42 U.S.C. § 1983.  Accordingly, I recommend that Plaintiff's claim against Defendant Irwin regarding the revocation of contact visiting privileges be dismissed.

     5.    Failure to Respond to Grievances

Plaintiff alleges that Defendant Harder failed to respond to Plaintiff's grievance regarding the incidents with Defendant Valls.  (Dkt. No. 9 at 6.)  Defendants argue that Plaintiff has not stated a cause of action against Defendant Harder because Plaintiff has not shown that Defendant Harder was personally involved in any alleged constitutional violation.  (Dkt. No. 40-28 at 16-17.)  Defendants are correct.

"'[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'"  *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 [2d Cir. 1991]).[34]  In order to prevail on a cause of action under 42 U.S.C. § 1983 against an individual, a plaintiff must show some tangible connection between the alleged unlawful conduct and the defendant.[35]  If the defendant is a supervisory official, a mere "linkage" to the unlawful conduct through "the prison chain of command" (i.e., under the doctrine of *respondeat superior*) is insufficient to show his or her personal involvement in that unlawful conduct.[36]  In other words, supervisory officials may

---

[34]    *Accord*, *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977), *cert. denied*, 434 U.S. 1087 (1978); *Gill v. Mooney*, 824 F2d 192, 196 (2d Cir. 1987).

[35]    *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986).

[36]    *Polk County v. Dodson*, 454 U.S. 312, 325 (1981); *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003); *Wright*, 21 F.3d at 501; *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985).

not be held liable merely because they held a position of authority.[37]   Rather, supervisory personnel may be considered "personally involved" only if they (1) directly participated in the violation, (2) failed to remedy that violation after learning of it through a report or appeal, (3) created, or allowed to continue, a policy or custom under which the violation occurred, (4) had been grossly negligent in managing subordinates who caused the violation, or (5) exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that the violation was occurring.[38]

A prisoner's allegation that a supervisory official failed to respond to a grievance is insufficient to establish that the official "failed to remedy that violation after learning of it through a report or appeal" or "exhibited deliberate indifference ... by failing to act on information indicating that the violation was occurring."  *Rivera v. Goord*, 119 F. Supp. 2d 327, 344-45 (S.D.N.Y. 2000).  *See also Watson v. McGinnis,* 964 F. Supp. 127, 130 (S.D.N.Y. 1997)("The law is clear that allegations that an official ignored a prisoner's letter are insufficient to establish liability.").

Here, Plaintiff's only claim against Defendant Harder is that he failed to respond to Plaintiff's grievance.  Therefore, I recommend that the Court grant Defendants' motion for summary judgment and dismiss the claim against Defendant Harder.

### D.      Claims Against the Broome County Jail

In the caption to his complaint, Plaintiff names the Broome County Jail as a defendant.

---

[37]      *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996).

[38]      *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (adding fifth prong); *Wright*, 21 F.3d at 501 (adding fifth prong); *Williams v. Smith*, 781 F.2d 319, 323-324 (2d Cir. 1986) (setting forth four prongs).

The body of his complaint does not contain any allegations against the jail.  Defendants move for summary judgment of any claims that Plaintiff may have against the jail.  Defendants argue that Plaintiff has not shown that a municipal policy or custom caused any injury to Plaintiff.  (Dkt. No. 40-28 at 11-14.)  Defendants are correct.

It is well established that "[a] municipality may not be held liable in a § 1983 action for the conduct of a lower-echelon employee solely on the basis of *respondeat superior*."[39]  "Rather, to establish municipal liability under § 1983 for unconstitutional acts by a municipality's employees, a plaintiff must show that the violation of [his or] her constitutional rights resulted from a municipal custom or policy."[40]  "Thus, to hold a [municipality] liable under § 1983 for the unconstitutional actions of its employees, a plaintiff is required to . . . prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right."[41]

---

[39]     *Powell v. Bucci*, 04-CV-1192, 2005 WL 3244193, at *5 (N.D.N.Y. Nov. 30, 2005) (McAvoy, J.); *see also Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 691 (1978) ("[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents."); *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983) ("[A] [municipality] may not be held for the actions of its employees or agents under a theory of *respondeat superior*.").

[40]     *Powell*, 2005 WL 3244193, at *5; *Monell*, 436 U.S. at 690-691 ("[L]ocal governments . . . may be sued for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels."); *Batista*, 702 F.2d at 397 ("[M]unicipalities may be sued directly under § 1983 for constitutional deprivations inflicted upon private individuals pursuant to a governmental custom, policy, ordinance, regulation, or decision."); *Smith v. City of New York*, 290 F. Supp.2d 317, 321 (S.D.N.Y. 2003) ("In order to establish the liability of [municipal] defendants in an action under § 1983 for unconstitutional acts by [its] employees, a plaintiff must show that the violation of [his or] her constitutional rights resulted from a municipal custom or policy.").

[41]     *Batista*, 702 F.2d at 397, *accord*, *Zahra v. Town of Southold*, 48 F.3d 674, 685 (2d Cir. 1995), *McKeon v. Daley*, 101 F. Supp.2d 79, 92 (N.D.N.Y. 2000) (Hurd, J.), *Merriman v.*

With regard to the first element (the existence of a policy or custom), a "[p]laintiff may establish the 'policy, custom or practice' requirement by demonstrating: (1) a formal policy officially endorsed by the municipality . . . ; (2) actions taken by government officials responsible for establishing municipal policies related to the particular deprivation in question . . . ; (3) a practice so consistent and widespread that it constitutes a 'custom or usage' sufficient to impute constructive knowledge to the practice of policymaking officials . . . ; or (4) a failure by policymakers to train or supervise subordinates to such an extent that it amounts to 'deliberate indifference' to the rights of those who come in contact with the municipal employees. . . ."[42]

Here, as discussed above, Plaintiff has not raised a genuine issue of material fact that his constitutional rights were violated, much less that any violation was the result of a custom or policy of the Broome County Jail.  Therefore, I recommend that Defendants' motion for summary judgment dismissing Plaintiff's claims against the jail be granted.

**ACCORDINGLY**, it is

**RECOMMENDED** that Defendants' motion for summary judgment (Dkt. No. 40) be **<u>GRANTED</u>**; and it is further

**RECOMMENDED** that the Court dismiss Plaintiff's Eighth Amendment medical care claim against Defendants Simmons and Thayne *sua spone* pursuant to 28 U.S.C. §

_____

*Town of Colonie, NY*, 934 F. Supp. 501, 508 (N.D.N.Y. 1996) (Homer, M.J.); *Douglas v. County of Tompkins*, 90-CV-0841, 1995 WL 105993, at *12 (N.D.N.Y. March 2, 1995) (McCurn, J.), *Keyes v. County of Albany*, 594 F. Supp. 1147, 1156 (N.D.N.Y. 1984) (Miner, J.).

[42]     *Dorsett-Felicelli, Inc.*, 371 F. Supp.2d 183, 194 (N.D.N.Y. 2005) (Kahn, J.) (citing three Supreme Court cases for these four ways), *accord, Dunbar v. County of Saratoga*, 358 F. Supp.2d 115, 133-134 (N.D.N.Y. 2005) (Munson, J.); *see also Clayton v. City of Kingston*, 44 F. Supp.2d 177, 183 (N.D.N.Y. 1999) (McAvoy, J.) (transposing order of second and third ways, and citing five more Supreme Court cases).

1915(e)(2)(B); and it is further

      **RECOMMENDED** that the Court decline to address Plaintiff's belatedly-asserted claim

that his disciplinary hearing was conducted unfairly.

      Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten days within which to file written

objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.

**<u>FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE</u>**

**<u>APPELLATE REVIEW</u>**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v.*

*Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1);

Fed. R. Civ. P. 72, 6(a), 6(e).


Dated: July 9, 2009
      Syracuse, New York

                            George H. Lowe
                        United States Magistrate Judge